AB:SEF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-10-1001

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DREW CAMPBELL,

            Defendant.

FILED UNDER SEAL
AFFIDAVIT AND
COMPLAINT IN
SUPPORT OF ARREST WARRANT
(21 U.S.C. § 846)

- - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

    JOHN BURNS, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, on or about and between August 1, 2008 and February 28, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DREW CAMPBELL, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved five hundred grams or more of a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

    (Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the FBI for approximately five years, and I am assigned to the Organized Crime Division. I have experience investigating matters involving narcotics trafficking, armed robbery, attempted robbery, and other violent crimes, racketeering activities, money laundering and other illegal activity. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my conversations with other law enforcement officers, including officers of the Suffolk County Police Department, my review of documents, and my own training and experience.

2. According to information provided by a Cooperating Witness ("CW")[2], the defendant, DREW CAMPBELL, told the CW that

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. For calls that were intercepted pursuant to a court-authorized wiretap, not all relevant portions of such conversations have been described. To the extent that quotations are cited below, the quoted segments are based on draft, not final, transcripts.

[2] The CW pled guilty pursuant to a cooperation agreement in the Eastern District of New York to a felony drug charge. The CW's information has been corroborated by, among other things, court-authorized wiretaps, physical surveillances, and statements by other witnesses. The CW is cooperating with the government in the hope of obtaining leniency in sentencing.

2

he purchased one kilogram of cocaine in or about November 2008 from an individual known as "Marlo" for purposes of distribution to other individuals. CAMPBELL also told the CW that, in 2009, he sold cocaine to an individual known as "Tray," to whom CAMPBELL had been introduced by Robert Spatafora.

3. In or about and between August 2009 and September 2009, law enforcement agents acting pursuant to a court-authorized wiretap intercepted calls between Robert Spatofora and and the defendant. Relevant portions of some of these calls are excerpted below. Based upon my training and experience, my participation in this investigation and my conversations with other law enforcement agents and witnesses, I believe that the calls excerpted below concern cocaine trafficking.

4. On or about August 5, 2009, law enforcement agents acting pursuant to a court-authorized wiretap intercepted a call between Spatafora and the defendant.[3] The following is an excerpt from the call:

> SPATAFORA: What do you figure for seven, if I had? 'Cause my friend's gotta, my friend's gotta work something out. He wants to see something the other way, you understand what I'm talking about?
>
> CAMPBELL: OK I understand, yeah.

---

[3] The call was intercepted on (516) 903-2345, a phone registered to Rob's Pro Towing Inc., and used by Robert Spatafora, from (631) 478-2453, a phone registered to the defendant. The caller identified himself as "Drew" and addressed the other individual as "Rob."

SPATAFORA:   'Cause he's got two clients, different people, you know what I'm saying?

CAMPBELL:    OK, so I'll have something else with me too.

SPATAFORA:   Huh?

CAMPBELL:    Yeah, I can do that. I understand what you're saying. I'll . . .

SPATAFORA:   He's got to see it the other way. If it's good, then he'll stick with you. But you gotta give me a price on seven.

CAMPBELL:    OK, sounds good. I'll see you there then.

SPATAFORA:   No, you gotta give me a price.

CAMPBELL:    Oh right now? Uh, just uh, I would say, like, the other way, for the ... like 850.

SPATAFORA:   For seven?

CAMPBELL:    Oh for seven. No whatever it would be then.

SPATAFORA:   No, he wants to take it your way and go the other way to make sure it's fuckin' good. And then he's going to stick with you, you understand?

CAMPBELL:    OK, you're talking about the guy who called me yesterday, right?

SPATAFORA:   No. Someone totally different.

CAMPBELL:    So, uh, for seven, I'm sorry...

SPATAFORA:   Just listen. He takes it your way, he tried it that way. Now he wants to do it the other way, you understand what I'm saying? And if it's good he's going to stick with you.

CAMPBELL:    Alright, so he wants a price for seven?

4

SPATAFORA: Yeah, right now.

CAMPBELL: Alright, what did I say then? [UI] I'm sorry . . . [UI] real quick. Uh, three and a quarter.

SPATAFORA: How much?

CAMPBELL: Three and a quarter.

SPATAFORA: Alright, I'll call you in a little while or I'll let you know by later. If I get busy, just call busy, 'cause I'm going crazy right now, alright?

5. Based upon my training and experience, which includes the investigation of narcotics trafficking, and on conversations with other law enforcement agents who are also involved in investigating drug crimes, including the distribution of cocaine, I believe that the conversation between Spatafora and the defendant concerned a transaction for seven grams of cocaine, which the defendant offered to sell to Spatafora's friend for $325. I further believe that in this conversation, Spatafora's statement "he wants to take it your way and go the other way to make sure it's fuckin' good," was intended to inform the defendant that Spatafora's friend wished to cook the cocaine into crack, in order to test the quality of the cocaine the defendant was selling.

6. In two subsequent phone calls on August 5, 2009, the defendant informed Spatafora that he was on his way to meet with Spatafora.

5

7.   At or about 5:30 p.m. on August 5, 2009, law enforcement agents observed CAMPBELL arrive at Spatafora's automotive repair shop in Ronkonkoma, New York.  Thereafter, the agents observed an individual known to them as Trayarn Singletary, also known as "Tray," arrive at the repair shop and go inside.

8.   On September 9, 2009, law enforcement agents intercepted the following call between Spatafora and the defendant:

| | |
|---|---|
| SPATAFORA: | I'm just fuckin' tellin' you, you're getting a lot of complaints again.  I'm just telling you, so you can do the right thing. |
| CAMPBELL: | Alright, from uh, from . . . |
| SPATAFORA: | From the people that see him. |
| CAMPBELL: | From which kid, which one? |
| SPATAFORA: | The black guy. |
| CAMPBELL: | Alright.  Alright, 'cause he had said something to me and I thought everything was alright since then. |
| SPATAFORA: | No.  'Cause fuckin' the people . . . I see the people he talks to, so they told me direct.  Whatever, I don't want to see you fuck up again, you know? |
| CAMPBELL: | No, no.  Alright, yeah, I'll talk to my friend right now. |

SPATAFORA: Alright, I just wanted to let you know, alright?

CAMPBELL: Thanks again.

9. Based upon my participation in this investigation, I believe that Spatafora's reference to "the black guy" was a reference to Singletary, who is an approximately 27 year-old, well-built African-American individual of average height. I further believe, based upon my training and experience and conversations with other law enforcement agents, that the September 9 conversation between Spatafora and the defendant concerned complaints that Spatafora was relaying to the defendant about the quality of the cocaine the defendant had sold to Singletary, and that Singletary had sold to other associates of Spatafora.

10. Beginning in July 2009, and continuing for several months thereafter, agents monitoring Spatafora's phone pursuant to the court-authorized wiretap intercepted multiple phone calls in which Spatafora asked Singletary to deliver a "hundo" to friends and employees of Spatafora. Based upon my training and experience, my participation in this investigation and my conversations with other law enforcement agents and witnesses, I believe that "hundo" is a term commonly used by Spatafora to refer to $100 worth of cocaine.

## SEALING

11. I request that this affidavit and an arrest warrant issued in connection therewith be sealed until further order of the Court. Public disclosure of this affidavit prior to CAMPBELL's arrest would jeopardize this investigation and would create a risk that the defendant would flee or otherwise attempt to evade prosecution.

WHEREFORE, your deponent respectfully requests that a sealed arrest warrant be issued for the defendant DREW CAMPBELL so that he may be dealt with according to law.

JOHN BURNS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
30 Day of August, 2010

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK